UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WENDY ARTEAGA,<br><br>  Plaintiff,<br><br>v.<br><br>CINRAM-TECHNICOLOR, et al.,<br><br>  Defendants. | Case No. 3:19-cv-00349<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Eli J. Richardson, District Judge

### REPORT AND RECOMMENDATION

This civil rights action stems from pro se and *in forma pauperis* Plaintiff Wendy Arteaga's employment with Defendant Technicolor Home Entertainment Services Southeast, LLC (Technicolor). [1] (Doc. No. 1.) Arteaga alleges that Technicolor and Defendant Alliance HR, Inc. (Alliance), the employment agency that placed her with Technicolor, failed to promote her, subjected her to unequal employment terms and conditions, and ultimately terminated her employment because of her race and Mexican nationality. (*Id.*) Arteaga also alleges that she was terminated for filing a charge of discrimination. (*Id.*) Arteaga asserts claims against the defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (*Id.*)

Alliance has answered the complaint (Doc. No. 12). Technicolor has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Arteaga's complaint fails to differentiate between the defendants and, regardless, does not sufficiently allege that she was

---

[1] Arteaga's complaint identifies the defendants as Cinram-Technicolor and Alliance HR Services. (Doc. No. 1.) The defendants have clarified that they are properly named as Technicolor Home Entertainment Services Southeast, LLC, and Alliance HR, Inc. (Doc. Nos. 12, 17.)

mistreated because of her race or Mexican nationality or that Technicolor retaliated against her. (Doc. Nos. 17, 18.) Arteaga filed a response in opposition to Technicolor's motion to dismiss (Doc. No. 23), in which she expands significantly on the allegations of her complaint, and Technicolor filed a reply (Doc. No. 24). Because Arteaga has not adequately linked the mistreatment she claims to have experienced to her race or national origin, and because she has not plausibly alleged that her firing was retaliatory, the Magistrate Judge will recommend that Technicolor's motion to dismiss be granted. The Magistrate Judge will also recommend, based upon a sua sponte review of the complaint under 28 U.S.C. § 1915(e)(2), that Arteaga's claims against Alliance be dismissed for the same reasons. The dismissal of Arteaga's claims should be without prejudice to her filing an amended complaint that remedies the deficiencies discussed below.

## I. Background

### A. Factual History

The factual context for this action extends across multiple filings, including Arteaga's complaint (Doc. No. 1), the charge of discrimination that she filed with the Tennessee Human Rights Commission (THRC) (Doc. No. 18-1), which was ultimately transferred to the Equal Employment Opportunity Commission (EEOC), and her response in opposition to Technicolor's motion to dismiss (Doc. No. 23). In the interest of clarity, and given Arteaga's pro se status, the following factual history draws from those filings to provide a chronological narrative of relevant events. *See Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 862–63 (N.D. Ohio 2013) (finding that a charge of employment discrimination filed with the EEOC is a public record of which the Court can take judicial notice in ruling on a motion to dismiss); *see also Simpson v. Baskin*, No. 3:17-cv-01077, 2018 WL 1070897, at *2 (M.D. Tenn. Feb. 26, 2018) (considering allegations outside of pro se plaintiff's complaint in ruling on Rule 12(b)(6) motion because plaintiff could move to amend her complaint to include those allegations), *report and recommendation adopted*

*by* 2018 WL 1288908 (M.D. Tenn. Mar. 13, 2018). The allegations of Arteaga's complaint are taken as true for the purpose of ruling on Technicolor's motion to dismiss.

Alliance placed Arteaga in a position with Technicolor sometime in 2015. (Doc. No. 1.) Although the precise nature of Arteaga's employment with Technicolor is not clear from any of her filings, it appears to have involved packing and transporting boxes.[2] (Doc. No. 23.) In 2017, Arteaga began experiencing hostility at work. (Doc. No. 1.) Arteaga was wrongly accused of theft, called a "rat" and told "to keep quiet" after she overheard "allegations by company employees" and "witnessed company irregularities . . . ." (*Id.* at PageID# 4.) Her car was vandalized with the message "F[**]k stupped [sic][.]" (*Id.* at PageID# 5.) She was also subjected to "spy[ing], intimidation, hate[,] false accusation[s,] insinuations[,] constant bullying[,] defamation[,] harassment[,] and persecution" and overheard unspecified "negative statements about Mexicans[.]" (*Id.* at PageID# 4.)

Sometime in 2017, Arteaga went to Manager Leboardo Campos's office to complain that she was being asked to carry boxes that were heavier than those given to Technicolor's male employees. (Doc. No. 23.) Campos joked that this "was due to women's liberation." (*Id.* at PageID# 90.) Later that same day, Campos called Arteaga back to his office and falsely accused her of being absent from work various times. (Doc. No. 23.) Campos further accused her of "working with a password that was not [hers]" even though another manager named Elida Guerra had previously informed Arteaga that Technicolor had "made [Arteaga] a new password." (*Id.* at PageID# 90.) Campos also asked Arteaga "if [she] had [p]apers." (*Id.*) Arteaga cried after leaving

---

[2] The charge of discrimination that Arteaga filed with the THRC states that her title when hired was "[p]icker" and that her title as of January 2018 was "driver[.]" (Doc. No. 18-1, PageID# 81.)

3

Campos's office "because of the way he spoke to [her], the way he treated [her,] and . . . everything he . . . said to [her]." (*Id.*)

Arteaga was absent from work on August 25, 2017, but returned on Monday, August 28, 2017. (Doc. No. 23.) Arteaga noticed that she was being followed wherever she went. (*Id.*) After loading her first group of boxes and going "back for the second group[,]" she discovered that the boxes "were no longer on the pallet for [her] machine" because "[s]omeone had taken them." (*Id.* at PageID# 91.) When Arteaga asked her coworkers whether they had seen the boxes, they said they had not and mocked her. (Doc. No. 23.) Arteaga later discovered that someone named Seomara had taken the boxes. (*Id.*)

Arteaga complained about the incident to a supervisor named Michael Irwin, who angrily explained that Seomara was just trying to be helpful. (*Id.*) Arteaga disagreed, at which point Irwin took Arteaga to Campos's office. (*Id.*) Campos "interrogated [Arteaga] as if [she] were a criminal," repeatedly stating that Seomara took the boxes because Arteaga had gone to the bathroom. (*Id.* at PageID# 91.) Arteaga told Campos that he had not understood her. (Doc. No. 23.) "Then Campos raised his voice and said to [her], 'Don't talk to me like that. When it's good, I can be very good and when it's bad, I can be a d[**]k (*ojete*).'" (*Id.* at PageID# 91.) In Spanish, "the word *ojete* is a very strong, gross, offensive and vulgar word to say to a woman or in front of a woman, especially if it is coming from a superior or a boss." (*Id.*) Campos told Arteaga that he could "'question [her] as many times as [he] want[ed] to see if [she was] telling [him] the [t]ruth.'" (*Id.*) Campos then brought Arteaga to Technicolor's human resources office, "supposedly for having yelled at him." (*Id.*)

At the office, a human resources employee identified Arteaga as the Wendy "that no one likes, that they make feel real bad, [and] that everyone hates" and then began to laugh. (*Id.* at

4

PageID# 92.) "Police officials interrogated [Arteaga], wanting to get [her] to accept what they said, what they were accusing [her] of—that [she had gone] to the bathroom, . . . got[ten] mad, [and] yelled at manager . . . Campos." (*Id.*) Arteaga informed them that "they didn't know the complete story," to which the officials responded that she could "write a letter to the agency." (*Id.*) Before leaving, Arteaga signed a paper that she thinks "was a type of warning[;]" she did not receive a copy. (*Id.*)

Two days later, a woman named Maria "from the Alliance HR Office" approached Arteaga at work to have Arteaga "sign a paper where they accused [her] of bribery[ ] [and] unsatisfactory work . . . ." (*Id.*) Arteaga asked what bribery was, but Maria "did not explain it to [her]." (*Id.*) Arteaga repeatedly asked for a copy of the document containing the accusations, but Maria said that it was against Alliance and Technicolor policy to provide a copy. (Doc. No. 23.) Arteaga signed the document after Maria stated that Technicolor could make Arteaga leave if she refused to do so. (*Id.*) Arteaga ultimately received a copy of the document. (*Id.*)

On January 24, 2018, Arteaga filed a charge of discrimination against Technicolor with the THRC, accusing Technicolor of harassment, intimidation, and failure to promote her based on her Mexican nationality. (Doc. Nos. 1, 18-1.) The charge, which Arteaga originally completed in Spanish, includes the following English translation of Arteaga's summary of Technicolor's discriminatory actions:

> I want to file a complaint with the Cinram-Technicolor Company for workplace harassment. They foster, permit, encourage, promote, and support the harassment, intimidation, bullying, and hate at their installations. They have given their permission and the right to all persons and individuals to harass me frequently and persistently. I have been the target of ridicule, their insinuations, and their defamatory expressions, which have put my integrity, honesty, and reputation in doubt and in danger. They have been treating me as if I were a criminal, they circle around me, they spy on me, they follow me as if they were hunting an animal. I hold responsible the Cinram-Technicolor Company and the supervisory personnel in charge, whether they be called Bosses, Managers, Supervisors, Leaders and

5

> Employees of any kind, and at all levels of the different departments, who have participated in the harassing, bullying, intimidation, and hate. They have had me under psychological and social torture, impeding me from doing my job in a healthy manner. As an employee of this company, I have every right to be treated with respect and dignity, free of all advantageous abuses.

(Doc. No. 18-1, PageID# 82.) The THRC notified Technicolor's human resources administrator of the charge in a June 14, 2018 letter (Doc. No. 18-1) and transferred Arteaga's case to the EEOC in October 2018 (Doc. No. 1). The EEOC issued Arteaga a right-to-sue letter on March 20, 2019. (Doc. No. 1-1.) Arteaga was fired from her job on April 29, 2019. (Doc. No. 1.)

### B. Procedural History

Arteaga initiated this action on the day that she was fired by filing a form complaint for employment discrimination naming Technicolor and Alliance as defendants (*id.*), an application to proceed *in forma pauperis* (Doc. No. 2), and a motion to appoint counsel (Doc. No. 3). Arteaga checked the boxes on the form complaint associated with termination of employment, failure to promote, unequal terms and conditions of employment, and retaliation. (Doc. No. 1.) Arteaga seeks an investigation into the defendants' conduct as well as damages. (*Id.*)

The Court granted Arteaga's application to proceed *in forma pauperis* and reviewed the complaint under 28 U.S.C. § 1915(e)(2). (Doc. No. 6.) The Court found that, "[a]lthough the factual allegations in support of [Arteaga's] claims are somewhat conclusory," and although it was not clear "whether she has fully exhausted all her claims" or even "which [defendant] actually functioned as [her] employer[,]" the complaint states colorable claims for discrimination and retaliation under Title VII. (*Id.* at PageID# 21.) However, the Court reached that conclusion only for purposes of screening under 28 U.S.C. § 1915(e)(2), emphasizing that it could later dismiss Arteaga's claims for any of the reasons set forth in § 1915(e)(2) or upon the filing of a motion to dismiss. (Doc. No. 6.) The Court also denied Arteaga's motion to appoint counsel without prejudice. (*Id.*)

Alliance answered Arteaga's complaint (Doc. No. 12), and Technicolor filed a motion to dismiss (Doc. No. 17), to which it attached the charge of discrimination that Arteaga filed with the THRC (Doc. No. 18-1). Technicolor argues that the allegations in Arteaga's complaint regarding discriminatory treatment fail to state a claim under Title VII because they do not identify specific "instances of . . . alleged discrimination or harassment based on [her] national origin or race . . . ." (Doc. No. 18, PageID# 63.) With respect to Arteaga's retaliation claim, Technicolor argues that Arteaga failed to exhaust it by presenting it to the EEOC. (Doc. No. 18.) Technicolor further argues that, regardless of whether Arteaga properly exhausted her retaliation claim, she "has provided no specific facts in her Complaint about the alleged retaliation . . . ." (*Id.* at PageID# 67.)

Arteaga's response in opposition to Technicolor's motion to dismiss consists of several pages of additional allegations about her employment. (Doc. No. 23.) In its reply, Technicolor first argues that Arteaga failed to respond to any of the arguments raised in its motion to dismiss and that the Court should not consider the additional factual allegations in Arteaga's response in ruling on that motion. (Doc. No. 24.) Alternatively, Technicolor argues that the "additional allegations are still unconnected to [Arteaga's] race and/or national origin and, thus, still do not support her claims." (*Id.* at PageID# 96 n.1.)

## II. Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead

7

'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Arteaga proceeds pro se, the Court construes her filings "'liberally'" and holds her complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**III.  Analysis**

To state a claim for discrimination or retaliation under Title VII, Arteaga must allege sufficient factual content for the Court to reasonably infer that Technicolor discriminated against her "with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin[,]" 42 U.S.C. § 2000e-2(a)(1), or discriminated against her because she "opposed" any such discrimination, *id.* § 2000e-3(a). *See Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (articulating pleading standard for discrimination claims under Title VII); *Trevino v. Austin Peay State Univ.*, No. 3:11-cv-01139, 2012 WL 951488, at *3–

4 (M.D. Tenn. Mar. 19, 2012) (articulating pleading standards for discrimination and retaliation claims under Title VII). Arteaga need not plead a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to survive Technicolor's motion to dismiss. (Doc. No. 18.) In *Swierkiewicz v. Sorema N.A.*, the Supreme Court held that "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement." 534 U.S. 506, 510 (2002); *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (same). "Thus, 'the ordinary rules for assessing the sufficiency of a complaint apply[,]'" *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (quoting *Swierkiewicz*, 534 U.S. at 511), and the Court considers only whether Arteaga "has sufficiently pled 'a claim to relief that is plausible on its face[,]'" *id.* (quoting *Twombly*, 550 U.S. at 570). *See Navarro-Teran v. Embraer Aircraft Maint. Servs., Inc.*, 184 F. Supp. 3d 612, 620 (M.D. Tenn. 2016) (explaining that, for plaintiff to survive motion to dismiss his Title VII claim, he must "plead plausible facts supporting the material elements" of that claim).

Arteaga asserts that Technicolor failed to promote her and ultimately terminated her employment because of her race and Mexican nationality. But, as Technicolor argues (Doc. No. 18), Arteaga pleads no facts to support that conclusion. She does not allege the position for which she was denied a promotion, when that happened, or who was involved in the promotion decision, nor does she describe any of the circumstances surrounding her firing on April 29, 2019. Arteaga has thus failed to state a claim for discriminatory failure-to-promote or termination of her employment. *See Wells v. Steve Madden, Ltd.*, No. 3-15-0366, 2015 WL 4476597, at *3 (M.D. Tenn. July 22, 2015) (finding that plaintiff had failed to plead a 42 U.S.C. § 1981 claim based on discriminatory termination where plaintiff had not alleged, among other things, "when such termination occurred, by whom she was fired, what reason was given for her firing, [or] how the

firing was connected to her race or her protected activity . . .");  *Howse v. Metro Gov't Police Dep't*, No. 3:13-01287, 2014 WL 1715449, at *2 (M.D. Tenn. Apr. 30, 2014) (granting motion to dismiss plaintiff's failure-to-promote claim where he had alleged neither "that he applied for and was qualified for these promotions nor that he was considered for and denied the position").

The gist of Arteaga's allegations is that she was repeatedly harassed at work. But for such harassment to be actionable under Title VII as a hostile work environment claim, it must "'amount to discriminatory changes in the terms and conditions of employment.'" *Navarro-Teran*, 184 F. Supp. 3d at 623 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see also Trotter v. Cargill, Inc.*, 699 F. Supp. 2d 1043, 1055 (W.D. Tenn. 2010) ("Title VII is not meant to be a 'general civility code.'" (quoting *Faragher*, 524 U.S. at 788)). To state such a claim, Arteaga must plead that

> "(1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [her protected status], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act."

*Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019) (alteration in original) (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013)).

Technicolor rightly argues that Arteaga has failed to provide sufficient factual content to support a hostile work environment claim. Arteaga certainly claims that she was mistreated—called a rat, mocked, surveilled, interrogated, wrongfully accused of bribery and unsatisfactory job performance, and subjected to offensive vandalism. But Arteaga fails to provide factual allegations plausibly linking any of that mistreatment to her race or Mexican nationality. *See McDaniel v. Potter*, Nos. 1:06 CV 0803, 1:06 CV 1371, 2007 WL 3165807, at *9 (N.D. Ohio Oct. 26, 2007) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only

at harassment that occurs because of the protected class of the plaintiff."). Although Arteaga does allege negative statements were made about Mexicans, she does not provide a single example of such a statement or any relevant factual context. The only allegation that remotely touches on Arteaga's race or national origin is her claim that Campos asked her if she "had papers," presumably referring to immigration documents. But that isolated question is not enough, by itself, to create the "discriminatorily abusive work environment" prohibited by Title VII. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22, 114 (1993); *see also Hudson v. City of Highland Park*, 943 F.3d 792, 803 (6th Cir. 2019) (explaining that "'offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment'" (quoting *Faragher*, 524 U.S. at 788)); *cf. Navarro-Teran*, 184 F. Supp. 3d at 623 (finding that plaintiff had pleaded a hostile work environment claim based on race and national origin discrimination where he alleged "a series of racially charged insults and taunts over the years" as well as "physical attacks[ ] and demeaning work assignments").

With respect to Arteaga's retaliation claim, Technicolor first argues that it should be dismissed as not exhausted because Arteaga's EEOC charge does not mention any form of retaliation. (Doc. No. 18.) "It is well-settled that before a person who claims to have been discriminated against in violation of Title VII may seek relief in federal court, the claimant must first unsuccessfully present his or her claim to the EEOC (or the equivalent state entity that has authority to grant or seek relief with respect to the alleged unlawful practice[ ])[.]"[3] *Wrobbel v. Int'l Bhd. of Elec. Workers, Local 17*, 638 F. Supp. 2d 780, 790 (E.D. Mich. 2009). However,

---

[3] Title VII's exhaustion requirement is non-jurisdictional. *Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851, 856 (6th Cir. 2013).

"[r]etaliation claims are typically excepted from the [exhaustion] requirement because they usually arise after the EEOC charge is filed." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 n.3 (6th Cir. 2010) (citing *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998)). Exempting retaliation claims based on the filing of an EEOC charge from the exhaustion requirement "'promotes efficiency by requiring only one filing[.]'" *Ayala v. Summit Constructors, Inc.*, 788 F. Supp. 2d 703, 718 (M.D. Tenn. 2011) (quoting *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 547 (6th Cir. 1991)). Importantly, "'[r]etaliatory conduct occurring prior to the filing of the EEOC complaint is distinguishable from conduct occurring afterwards as no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original complaint.'" *Id.*

Although Arteaga could have spelled out the basis of her retaliation claim more clearly, liberally construed, it is premised on Technicolor's decision to fire her after she filed a charge of discrimination with the THRC. Accordingly, Arteaga did not need to separately exhaust that claim. *See Ayala*, 788 F. Supp. 2d at 718. The authorities that Technicolor cites to support a contrary conclusion are not persuasive. (Doc. No. 18.) Those cases involve retaliation claims based on conduct that occurred before an EEOC charge was filed and could not have been alleged in that charge[4] or do not recognize the rule that a plaintiff need not exhaust a claim of retaliation that follows an EEOC charge.[5]

---

[4] *See Waggoner v. Carlex Glass Am., LLC*, 682 F. App'x 412, 414–17 (6th Cir. 2017) (involving employer's allegedly retaliatory refusal to transfer plaintiff to a different part of the glass plant where he worked, which occurred before plaintiff filed a charge of discrimination with the EEOC).

[5] *See Grimes v. Sw. Airlines Co.*, No. 3:16-2276, 2018 WL 646406 (M.D. Tenn. Jan. 31, 2018*), report and recommendation adopted by* 2018 WL 1282060 (M.D. Tenn. Mar. 13, 2018); *see also Wells*, 2015 WL 4476597.

Technicolor's alternative argument, that Arteaga's retaliation claim is too threadbare to survive a motion to dismiss, has merit. (Doc. No. 18.) As already discussed, Arteaga's only non-conclusory factual allegation about her firing is that it happened on April 29, 2019, about ten months after Technicolor's human resources administrator received notice of Arteaga's charge of discrimination on June 14, 2018. Temporal proximity between an employer's discovery of protected conduct and an adverse employment action may be sufficient to support an inference of retaliation, but only when the time elapsed between the discovery "and the retaliation was on the order of days, or at most, a few months." *Navarro-Teran*, 184 F. Supp. 3d at 622 (citing *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009)); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be 'very close'") (citation omitted). Such proximity is lacking here and, in the absence of any other allegations to establish the context of or intent behind her firing, Arteaga has failed to state a retaliation claim.[6] *See Ellis v. Prospect Airport Servs.*, No. 17-13852, 2019 WL 2218819, at *6 (E.D. Mich. Jan. 25, 2019) (finding that plaintiff had failed to plead a Title VII retaliation claim based on employer's opposition to his

---

[6] Although Arteaga was fired within about one month of her receipt of the right-to-sue letter, in *Clark County School District v. Breeden*, the Supreme Court declined to infer a retaliatory motive based on the timing of the EEOC's issuance of a right-to-sue letter. 532 U.S. at 273. The Court rejected the suggestion that the letter was the first notice the employer received of the employee's charge of discrimination, emphasizing that the charge itself was filed almost two years earlier and, under federal law, the employer must receive notice of such a charge within ten days after it is filed. *Id.* The Court held that the relevant period for the retaliatory motive analysis was the time between the EEOC charge and the adverse employment action. *Id.* Here, Arteaga filed her charge with the THRC, not the EEOC, and therefore the presumption of notice created by federal law does not apply. But there is still no reason to think that the defendants discovered Arteaga's charge of discrimination through the right-to-sue letter. The reasonable inference is that it was the THRC's June 14, 2018 letter to Technicolor that provided notice.

application for unemployment benefits where he offered "no factual allegations to support" the conclusion that such opposition was based on his filing of an EEOC charge), *report and recommendation adopted by* 2019 WL 1417163 (E.D. Mich. Mar. 29, 2019); *see also Navarro-Teran*, 184 F. Supp. 3d at 622 (stating that the court was unaware of any case in which causation was inferred "solely from allegations that the protected activity and retaliation took place a full *year* apart") (emphasis in original). Arteaga's allegations against Technicolor are insufficient to survive its motion to dismiss, which should therefore be granted.

Finally, this Court has a continuing and independent obligation under 28 U.S.C. § 1915(e)(2) to dismiss Arteaga's claims against Alliance if they could not survive a motion to dismiss under Rule 12(b)(6). Those claims, which are identical to Arteaga's claims against Technicolor, fail for the same reasons: Arteaga has not adequately connected her mistreatment to her race or Mexican nationality and has failed to plausibly allege that her firing was retaliatory. However, given Arteaga's pro se status, and because it appears that she might be able to plead claims for discrimination and retaliation if she were to provide the underlying factual context, she should be afforded an opportunity to amend her complaint to include allegations that meet the plausible pleading standard discussed above.

**IV.     Recommendation**

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Technicolor's motion to dismiss (Doc. No. 17) be GRANTED and that Arteaga's claims against Technicolor and Alliance be DISMISSED WITHOUT PREJUDICE to her filing an amended complaint.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party

who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 28th day of January, 2020.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge