UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WENDY ARTEAGA, <br><br> Plaintiff, <br><br> v. <br><br> CINRAM-TECHNICOLOR et al., <br><br> Defendants. | Case No. 3:19-cv-00349 <br><br> Judge Eli J. Richardson <br> Magistrate Judge Alistair E. Newbern |

# REPORT AND RECOMMENDATION

This civil rights action arises from pro se and *in forma pauperis* Plaintiff Wendy Arteaga's employment with Defendant Technicolor Home Entertainment Services Southeast, LLC (Technicolor). (Doc. No. 49.) Arteaga initiated this action on April 29, 2019, by filing a complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17, against Technicolor and Alliance HR, Inc. (Alliance), the employment agency that placed her with Technicolor. (Doc. No. 1.) Arteaga alleged that Technicolor and Alliance failed to promote her, subjected her to unequal terms and conditions of employment, and terminated her employment because of her race and Mexican nationality. (*Id.*) Arteaga also alleged that Technicolor and Alliance terminated her employment in retaliation for filing a charge of discrimination. (*Id.*)

On January 28, 2020, the Magistrate Judge recommended that Arteaga's claims against Technicolor and Alliance be dismissed because the allegations in the complaint did not allege a plausible claim for discrimination or retaliation under Title VII. (Doc. No. 27.) The Court adopted that report and recommendation and dismissed Arteaga's claims against Technicolor and Alliance "without prejudice to . . . filing an amended complaint by May 18, 2020." (Doc. No. 35,

PageID# 145.) Around a year later and after numerous extensions of time to do so, Arteaga filed an amended complaint. (Doc. No. 49.)

Alliance and Technicolor have moved to dismiss Arteaga's amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 50, 53.) Arteaga has responded in opposition to both motions (Doc. Nos. 58–61), and Alliance and Technicolor have filed replies (Doc. Nos. 62, 63). For the reasons that follow, the Magistrate Judge will recommend that both motions to dismiss be granted.

I. **Factual and Procedural Background**

    A. **Factual Background**

        1. **Arteaga's Original Complaint and Related Filings**

An amended pleading typically "supersedes the pleading it modifies" such that "the original pleading no longer performs any function in the case . . . ." 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. updated Apr. 2021). Therefore, the factual allegations in Arteaga's original complaint (Doc. No. 1) are no longer part of the operative pleading. Neither are the charge of discrimination that she filed with the Tennessee Human Rights Commission (THRC) (Doc. No. 18-1), which was ultimately transferred to the Equal Employment Opportunity Commission (EEOC), and her response in opposition to Technicolor's first motion to dismiss (Doc. No. 23). The factual allegations from those filings, as recounted in the report and recommendation that recommended dismissal of Arteaga's claims (Doc. No. 27), are included here to provide context for the allegations of Arteaga's amended complaint.

Alliance placed Arteaga in a position with Technicolor sometime in 2015. (Doc. No. 1.) Although the precise nature of Arteaga's employment with Technicolor is not clear from any of her filings, it appears to have involved packing and moving boxes. (Doc. No. 23.) In 2017, Arteaga

2

began experiencing hostility at work. (Doc. No. 1.) Arteaga was wrongly accused of theft, called a "rat," and told "to keep quiet" after she overheard "allegations by company employees" and "witnessed company irregularities . . . ." (*Id.* at PageID# 4.) Her car was vandalized with the message "F[**]k stupped [sic][.]" (*Id.* at PageID# 5.) She was also subjected to "spy[ing], intimidation, hate[,] false accusation[s,] insinuations[,] constant bullying[,] defamation[,] harassment[,] and persecution" and she overheard unspecified "negative statements about Mexicans[.]" (*Id.* at PageID# 4.)

Sometime in 2017, Arteaga went to Manager Leobardo Campos's office to complain that she was being asked to carry boxes that were heavier than those given to Technicolor's male employees. (Doc. No. 23.) Campos joked that this "was due to women's liberation." (*Id.* at PageID# 90.) Later on the same day, Campos called Arteaga back to his office and falsely accused her of being absent from work various times. (Doc. No. 23.) Campos also accused her of "working with a password that was not [hers]" even though another manager had previously informed Arteaga that Technicolor had "made [Arteaga] a new password." (*Id.* at PageID# 90.) Campos also asked Arteaga "if [she] had [p]apers." (*Id.*) Arteaga cried after leaving Campos's office "because of the way he spoke to [her], the way he treated [her,] and . . . everything he . . . said to [her]." (*Id.*)

Arteaga was absent from work on August 25, 2017, but returned on Monday, August 28, 2017. (Doc. No. 23.) Arteaga noticed that she was being followed wherever she went. (*Id.*) After loading her first group of boxes and going "back for the second group[,]" she discovered that the boxes "were no longer on the pallet for [her] machine" because "[s]omeone had taken them." (*Id.* at PageID# 91.) When Arteaga asked her coworkers whether they had seen the boxes, they said they had not and mocked her. (Doc. No. 23.) Arteaga later discovered that someone named Seomara had taken the boxes. (*Id.*)

Arteaga complained about this incident to a supervisor named Michael Irwin, who angrily explained that Seomara was just trying to be helpful to Arteaga. (*Id.*) Arteaga disagreed, at which point Irwin took Arteaga to Campos's office. (*Id.*) Campos "interrogated [Arteaga] as if [she] were a criminal," repeatedly stating that Seomara took the boxes because Arteaga had gone to the bathroom. (*Id.* at PageID# 91.) Arteaga told Campos that he had not understood her. (Doc. No. 23.) "Then Campos raised his voice and said to [her], 'Don't talk to me like that. When it's good, I can be very good and when it's bad, I can be a d[**]k (*ojete*).'" (*Id.* at PageID# 91.) Arteaga states that the Spanish word "*ojete* is a very strong, gross, offensive and vulgar word to say to a woman or in front of a woman, especially if it is coming from a superior or a boss." (*Id.*) Campos told Arteaga that he could "'question [her] as many times as [he] want[ed] to see if [she was] telling [him] the [t]ruth.'" (*Id.*) Campos then brought Arteaga to Technicolor's human resources office, "supposedly for having yelled at him." (*Id.*)

At the office, a human resources employee called Arteaga as the Wendy "that no one likes, that they make feel real bad, [and] that everyone hates" and then began to laugh. (*Id.* at PageID# 92.) "Police officials interrogated [Arteaga], wanting to get [her] to accept what they said, what they were accusing [her] of—that [she had gone] to the bathroom, . . . got[ten] mad, [and] yelled at manager . . . Campos." (*Id.*) Arteaga informed them that "they didn't know the complete story," to which the officials responded that she could "write a letter to the agency." (*Id.*) Before leaving, Arteaga signed a paper that she thinks "was a type of warning[,]" but she did not receive a copy. (*Id.*)

Two days later, a woman named Maria "from the Alliance HR Office" approached Arteaga at work to have Arteaga "sign a paper where they accused [her] of bribery[ ] [and] unsatisfactory work . . . ." (*Id.*) Arteaga asked what bribery was, but Maria "did not explain it to [her]." (*Id.*) Arteaga repeatedly asked for a copy of the document containing the accusations, but Maria said that it was against Alliance and Technicolor policy to provide a copy. (Doc. No. 23.) Arteaga

4

signed the document after Maria stated that Technicolor could make Arteaga leave if she refused to do so. (*Id.*)

On January 24, 2018, Arteaga filed a charge of discrimination against Technicolor with the THRC, accusing Technicolor of harassment, intimidation, and failure to promote her based on her Mexican nationality. (Doc. Nos. 1, 18-1.) The charge, which Arteaga originally completed in Spanish, includes the following English translation of Arteaga's summary of Technicolor's discriminatory actions:

> I want to file a complaint with the Cinram-Technicolor Company for workplace harassment. They foster, permit, encourage, promote, and support the harassment, intimidation, bullying, and hate at their installations. They have given their permission and the right to all persons and individuals to harass me frequently and persistently. I have been the target of ridicule, their insinuations, and their defamatory expressions, which have put my integrity, honesty, and reputation in doubt and in danger. They have been treating me as if I were a criminal, they circle around me, they spy on me, they follow me as if they were hunting an animal. I hold responsible the Cinram-Technicolor Company and the supervisory personnel in charge, whether they be called Bosses, Managers, Supervisors, Leaders and Employees of any kind, and at all levels of the different departments, who have participated in the harassing, bullying, intimidation, and hate. They have had me under psychological and social torture, impeding me from doing my job in a healthy manner. As an employee of this company, I have every right to be treated with respect and dignity, free of all advantageous abuses.

(Doc. No. 18-1, PageID# 82.) The THRC notified Technicolor's human resources administrator of the charge in a June 14, 2018 letter (Doc. No. 18-1) and transferred Arteaga's case to the EEOC in October 2018 (Doc. No. 1). The EEOC issued Arteaga a right-to-sue letter on March 20, 2019. (Doc. No. 1-1.) Arteaga was fired from her job on April 29, 2019. (Doc. No. 1.)

## 2. Arteaga's Amended Complaint[1]

Arteaga states in her amended complaint that Alliance placed her in a position with Technicolor in 2015. (Doc. No. 49.) Arteaga was initially hired as a "[p]icker[,]" which involved retrieving product from various areas and placing it in open boxes for packaging. (*Id.* at PageID# 278.) Arteaga used a scanner and entered a password when working as a picker. (Doc. No. 49.) She also packed boxes and worked in other areas, which did not require the use of a scanner or password. (*Id.*) In July 2015, Arteaga began working part-time as a "[d]river[,]" which involved transporting packed, closed product boxes between areas and using a scanner and password. (*Id.* at PageID# 279.) Arteaga later became a full-time driver. (Doc. No. 49.)

On March 20, 2017, Arteaga filed a complaint with Technicolor's human resources department after an employee on Technicolor's Manifest line made fun of her for being Mexican. (Doc. No. 49.) A few days later, Manager Elida Guerra told Arteaga that her production was low and gave her an undated paper showing Arteaga's production in units-per-minute and lines-per-minute. (*Id.*) "Another day[,]" Arteaga asked Guerra for another copy of her production data "to see if [she] was improving," and Guerra provided another undated production report. (*Id.* at PageID# 265.) On April 4, 2017, Arteaga applied for a team leader position in the stocking department by giving an application to Mike Todora in Technicolor's human resources department, but she was not selected for the position and was never informed "what the result of the selection was." (*Id.* at PageID# 266.)

On April 26, 2019, Campos summoned Arteaga to a meeting in Technicolor's human resources department with "Miss Diana[,]" manager Robbie Eastvold, and Maria. (*Id.* at

---

[1] The facts taken from Arteaga's amended complaint (Doc. No. 49) are presumed to be true for purposes of resolving the defendants' motions to dismiss. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

PageID# 270.) Eastvold and Maria asked Arteaga "if [she] had an argument or fight with . . . a woman [whose] name was not known to [Arteaga]." (*Id.*) Arteaga asked them to bring her the woman so that she could determine whether she knew her, but "they did not want to" and would not provide more details or tell Arteaga the woman's name. (*Id.* at PageID# 272.)

Arteaga told Eastvold and Maria that an employee named Edgar had spoken rudely to her, including telling her "Me vale! Verga!", which Arteaga translated as "I don't f***ing care[.]" (*Id.* at PageID# 270.) Eastvold and Maria asked Arteaga if she "wanted to make a letter of that," and Arteaga said that she did, but told them that she would be unable to give them the letter before Monday because she had received prior approval to leave work at noon that day. (*Id.* at PageID# 271.) Eastvold and Maria initially "wanted [Arteaga] to leave [the letter] unfinished[,]" but eventually agreed that Arteaga could bring her letter about Edgar on Monday. (*Id.*) They also asked Arteaga to write another letter stating that she did not know the woman they had asked her about, and Eastvold told Arteaga that she could not leave until she finished that letter. (Doc. No. 49.)

Later the same day, Arteaga was prevented from reentering the building to retrieve her belongings. (Doc. No. 49.) Arteaga asked Eastvold and Maria to get her things, but it took "about an hour or so" for them to return. (*Id.* at PageID# 274.) Arteaga asked Maria what took so long, and Maria responded that she could not find Arteaga's bag because Arteaga's "scarf was blue and not black as [Arteaga] told her[;]" Arteaga maintains that her scarf is black. (*Id.* at PageID# 274.) Arteaga left Technicolor around 12:45 p.m. (Doc. No. 49.) She alleges that she was "treated . . . very badly as if [she] had done something wrong[,]" and that "[t]hey didn't respect [her] departure time [and] held [her] against [her] will[,]" and "treated [her] like [she] was a criminal . . . ." (*Id.* at PageID# 275.) Around 1:00 p.m., Arteaga received a message from Alliance employee Michael

7

Moore, telling Arteaga to report to Alliance's offices on Monday instead of returning to Technicolor. (Doc. No. 49.)

On Monday, April 29, 2019, Arteaga reported to Alliance's office, where Eastvold and Maria "told [her] that if [she] did not make the letter they wanted and sign it," she could not return to Technicolor. (*Id.* at PageID# 276.) Arteaga asked why she was being removed from her job, but Eastvold and Maria refused to provide any additional explanation. (Doc. No 49.) Arteaga was told "not to return" to Technicolor. (*Id.* at PageID# 277.)

B.     **Procedural Background**

Arteaga initiated this action on April 29, 2019, by filing a form complaint for employment discrimination against Technicolor and Alliance (Doc. No. 1), an application to proceed *in forma pauperis* (Doc. No. 2), and a motion to appoint counsel (Doc. No. 3). Arteaga checked boxes on the form complaint to indicate that she brought claims based on termination of her employment, failure to promote, unequal terms and conditions of employment, and retaliation. (Doc. No. 1.)

The Court granted Arteaga's application to proceed *in forma pauperis* and reviewed the complaint under 28 U.SC. § 1915(e)(2). (Doc. No. 6.) The Court found that "the factual allegations in support of [Arteaga's] claims are somewhat conclusory," and that it was not clear "whether she has fully exhausted her claims" or even "which [defendant] actually functioned as [her] employer[,]" but found that she had stated nonfrivolous claims for discrimination and retaliation under Title VII for the purposes of that initial screening. (*Id.* at PageID# 21.) The Court denied Arteaga's motion to appoint counsel without prejudice. (Doc. No. 6.)

Alliance answered Arteaga's original complaint (Doc. No. 12), and Technicolor filed a motion to dismiss (Doc. No. 17). The Magistrate Judge issued a report and recommendation finding that the original complaint and several related filings, liberally construed in Arteaga's favor, did not state a claim against Technicolor or Alliance because Arteaga had not "adequately

linked the mistreatment she claims to have experienced to her race or national origin," and had "not plausibly alleged that her firing was retaliatory." (Doc. No. 27, PageID# 104.) The Magistrate Judge recommended that Technicolor's motion to dismiss be granted and Arteaga's claims against Alliance be dismissed under 28 U.S.C. § 1915(e)(2). (Doc. No. 27.) The Court adopted that report and recommendation and dismissed Arteaga's original complaint "without prejudice to . . . filing an amended complaint by May 18, 2020." (Doc. No. 35, PageID# 145.)

On May 18, 2020, Arteaga filed three unsigned "notices" containing various factual allegations against Technicolor and Alliance. (Doc. Nos. 36–38.) The Court found that "Arteaga's unsigned notices do not comply with the Federal Rules of Civil Procedure or this Court's Local Rules[,]" ordered Arteaga to refile an amended complaint, and directed her to online resources for pro se litigants. (Doc. No. 46, PageID# 220.) After Arteaga refiled an unsigned proposed amended complaint that did not include a certificate of service (Doc. No. 47), the Court again ordered her to file a signed amended complaint that complies with the Federal Rules of Civil Procedure and this Court's Local Rules (Doc. No. 48). Arteaga then filed the signed amended complaint (Doc. No. 49) that is the operative pleading in this action.

On May 18, 2021, Alliance moved to dismiss Arteaga's amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 50.) Alliance argues that the facts alleged in the amended complaint do not cure the deficiencies that led the Court to dismiss her original complaint because Arteaga again has not linked any alleged mistreatment to her race or national origin. (Doc. No. 51.) Alliance also argues that Arteaga has not shown that she has exhausted her administrative remedies regarding her claims against Alliance. (*Id.*) Technicolor filed a motion to dismiss Arteaga's amended complaint on May 19, 2021. (Doc. No. 53.) Technicolor argues that Arteaga's amended complaint has not complied with the pleading requirements of the Federal Rules of Civil

9

Procedure and that she has not administratively exhausted her claims based on non-promotion or termination, has not alleged facts that satisfy the elements of a Title VII action, and has not complied with the Court's orders that she file an amended complaint that complies with the Federal Rules of Civil Procedure and this Court's Local Rules. (Doc. No. 54.) In her responses to Alliance's and Technicolor's motions, Arteaga provides additional factual allegations about her employment but does not directly address the arguments made. (Doc. Nos. 58–61.) In their replies, Technicolor and Alliance reiterate the arguments in their motions to dismiss and ask the Court not to consider the additional factual allegations in Arteaga's responses as part of her amended complaint. (Doc. Nos. 63, 64.)

After the defendants filed their replies, Arteaga filed a "response in opposition to the motion to dismiss . . . for Cinram-Technicolor[,]" which also contains additional factual allegations. (Doc. No. 64, PageID# 364.) The Court construes this filing as a surreply, which a party may seek leave to file on the rare occasion when "the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." Kivilaan v. Am. Airlines, Inc., No. 3:04-0814, 2008 WL 11390792, at *1 (M.D. Tenn. Oct. 17, 2008) (quoting Robinson v. Detroit News, Inc., 211 F. Supp. 2d 101, 113 (D.D.C. 2002)). Arteaga has not sought the Court's leave to file a sur-reply or shown that a sur-reply is necessary to address matters raised for the first time in the defendants' reply. Accordingly, Arteaga's surreply (Doc. No. 64) will not be considered in this Report and Recommendation.

**II.     Legal Standard**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of

Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Arteaga appears pro se, the Court construes her filings "'liberally'" and holds her complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

III.     **Analysis**

To state a claim for discrimination or retaliation under Title VII, Arteaga must allege sufficient factual content for the Court to reasonably infer that Technicolor discriminated against her "with respect to [her] compensation, terms, conditions, or privileges of employment, because

of [her] race, color, religion, sex, or national origin[,]" 42 U.S.C. § 2000e-2(a)(1), or discriminated against her because she "opposed" any such discrimination, *id.* § 2000e-3(a). *See Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (articulating pleading standard for discrimination claims under Title VII); *Trevino v. Austin Peay State Univ.*, No. 3:11-cv-01139, 2012 WL 951488, at *3–4 (M.D. Tenn. Mar. 19, 2012) (articulating pleading standards for discrimination and retaliation claims under Title VII). Arteaga need not plead a prima facie case of discrimination or retaliation under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to survive the defendants' motions to dismiss. In *Swierkiewicz v. Sorema N.A.*, the Supreme Court held that "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement." 534 U.S. 506, 510 (2002); *Keys*, 684 F.3d at 609 (same). "Thus, 'the ordinary rules for assessing the sufficiency of a complaint apply[,]'" *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (quoting *Swierkiewicz*, 534 U.S. at 511), and the Court considers only whether Arteaga "has sufficiently pled 'a claim to relief that is plausible on its face[,]'" *id.* (quoting *Twombly*, 550 U.S. at 570). *See also Navarro-Teran v. Embraer Aircraft Maint. Servs., Inc.*, 184 F. Supp. 3d 612, 620 (M.D. Tenn. 2016) (explaining that, for plaintiff to survive motion to dismiss his Title VII claims, he must "plead plausible facts supporting the material elements of his claims").

Technicolor and Alliance rightly argue that the factual allegations in Arteaga's amended complaint do not remedy the deficiencies that led the Court to dismiss her original complaint for not "adequately link[ing] the mistreatment she claims to have experienced to her race of national origin . . . ." (Doc. No. 27, PageID# 104.) Arteaga has not alleged any additional facts in her amended complaint from which the Court could reasonably infer that any of the actions were taken "because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012) (holding that "conclusory

12

Case 3:19-cv-00349   Document 65   Filed 03/02/22   Page 12 of 15 PageID #: 382

allegations of discriminatory intent without supporting factual allegations" are insufficient to show entitlement to relief for unlawful discrimination). Even if the Court were to consider the factual allegations in Arteaga's responses to the motions to dismiss (Doc. No. 60, 61), Arteaga has not provided any facts to support a plausible inference that Technicolor or Alliance discriminated against her because of her race or national origin. Therefore, Arteaga has not stated a claim for race or national origin discrimination against Technicolor or Alliance.

Likewise, Arteaga has failed to allege facts sufficient to plead a plausible retaliation claim. Title VII makes it unlawful to retaliate against employees for engaging in protected conduct. 42 U.S.C. § 2000e-3(a). Protected conduct includes opposing any practice made unlawful by Title VII, or making a charge or testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. *Id.* § 2000e-3(a). The prima facie elements of a retaliation claim are that: (1) Arteaga engaged in protected activity under Title VII; (2) the exercise of her protected rights was known to Technicolor and Alliance; (3) Technicolor and Alliance thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the adverse action. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019). As noted above, a plaintiff is not required to establish a prima facie case at the pleading stage, but must "plead plausible facts supporting the material elements" of the claim. *Navarro-Teran*, 184 F. Supp. 3d at 620.

Arteaga alleges that, in the weeks after she filed a complaint with Technicolor's human resources department, Guerra told her that her production was low and gave her undated paper copies of her production reports. (Doc. No. 49.) She also alleges that she applied for a promotion a few weeks after filing her human resources complaint but was not promoted. (*Id.*) Her response to Technicolor's motion to dismiss repeats these allegations. (Doc. No. 61.) Arteaga's complaint

to Technicolor's human resources department may constitute protected activity under Title VII. *See O'Connor v. Lampo Grp.*, No. 3:20-cv-00628, 2021 WL 4480482, at *10 (M.D. Tenn. Sept. 29, 2021) ("Protected conduct [thus] includes 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices.'" (alteration in original) (quoting *Coffman v. U.S. Steel Corp.*, 185 F. Supp. 3d 977, 986 (E.D. Mich. 2016))). However, Arteaga has not pleaded any facts that create a plausible inference of any causal link between her human resources complaint and Guerra's comments or her non-promotion.

Temporal proximity between an employer's discovery of protected conduct and an adverse employment action may be sufficient to support an inference of retaliation in some cases. *Navarro-Teran*, 184 F. Supp. 3d at 622 (citing *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009)). However, "the fact of temporal proximity alone [i]s not particularly compelling" where, as here, "the plaintiff's retaliation case [i]s otherwise weak . . . ." *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000); *see also Ellis v. Prospect Airport Servs.*, No. 17-13852, 2019 WL 2218819, at *6 (E.D. Mich. Jan. 25, 2019) (finding that plaintiff had failed to plead a Title VII retaliation claim based on employer's opposition to his application for unemployment benefits where he offered "no factual allegations to support" the conclusion that such opposition was based on his filing of an EEOC charge), *report and recommendation adopted by* 2019 WL 1417163 (E.D. Mich. Mar. 29, 2019). Arteaga's amended complaint does not plausibly allege that Technicolor and Alliance took adverse actions against her because of her human resources complaint.[2] Accordingly, her retaliation claims should also be dismissed.

---

[2] In her response to Alliance's motion to dismiss, Arteaga also alleges that she was mistreated in 2018 and that her firing in 2019 was "a clear sign of [r]etaliation[.]" (Doc. No. 60, PageID# 343.) However, even if the Court were to consider these factual allegations with her amended complaint, Arteaga has not connected this alleged mistreatment to any protected conduct and, as the Court noted when it dismissed her original complaint, her firing in 2019 is too far removed from any of her alleged protected conduct for the Court to infer causation based on

## IV.     Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Technicolor's and Alliance's motions to dismiss (Doc. Nos. 50, 53) be GRANTED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 2nd day of March, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge

---

temporal proximity alone. *See Navarro-Teran*, 184 F. Supp. 3d at 622 (stating that the court was unaware of any case in which causation was inferred "solely from allegations that the protected activity and retaliation took place a full *year* apart").